MICHAEL LICARI (BAR NO. 265241)
DANIEL HALIMI (BAR NO. 302872)
**D'Egidio Licari & Townsend, APC**
Attorneys at Law
5402 Ruffin Road, Suite 209
San Diego, CA 92123
Telephone: (619) 550-3011
Facsimile: (619) 923-2092

Attorneys for Plaintiff Kevin John Phillips

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SAN DIEGO DIVISION

| | |
|---|---|
| KEVIN JOHN PHILLIPS, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> RAYMOND THOMAS CLARK, an individual; DYNASTY CAPITAL PARTNERS, INC., a foreign corporation; RTC CAPITAL, LLC, a New York Limited Liability Company; CLARK CAPITAL PARTNERS, an unknown business entity; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No.: **'15CV1387 DMS JMA** <br><br> **COMPLAINT FOR:** <br><br> 1. **CANCELLATION OF A VOIDABLE CONTRACT UNDER REV. & TAX CODE § 23304.1;** <br> 2. **VIOLATIONS OF SECTION 10(B) AND RULE 10(b)(5) OF THE SECURITIES EXCHANGE ACT OF 1934; VIOLATION OF CALIFORNIA CORPORATIONS CODE § 25401;** <br> 3. **VIOLATION OF RULE 10b-16 OF THE SECURIES EXCHANCE ACT OF 1934;** <br> 4. **INTENTIONAL MISREPRESENTATION;** <br> 5. **FRAUD BY CONCEALMENT;** <br> 6. **BREACH OF FIDUCIARY DUTY;** <br> 7. **NEGLIGENCE;** <br> 8. **NEGLIGENT MISREPRESENTATION;** <br> 9. **NEGLIGENT SUPERVISION AND RETENTION;** <br> 10. **VIOLATION OF THE CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTIONS 17200 ET. SEQ.;** <br> 11. **BREACH OF CONTRACT** |

D'Egidio Licari &
Townsend, APC
Attorneys At Law
San Diego

PLAINTIFF KEVIN PHILLIPS'S COMPLAINT

Plaintiffs KEVIN PHILLIPS ("Plaintiff") allege as follows:

## JURISDICTION AND VENUE

1. This is an action for damages arising out of defendant's violations of Section 10(b) and Rules 10b(5)and 10b-16  of the Securities Exchange Act of 1934 and relief under Revenue and Tax Code § 23304.1.

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 because the securities fraud claim raises a question of federal law. Additionally, this Court has supplemental jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1367 because the claims of violation of California Corporations Code § 25401, intentional misrepresentation, fraud by concealment, fraud, breach of fiduciary duty, negligence, negligent misrepresentation, negligent supervision and retention, violation of California Business and Professions code sections 17200 et. seq. and breach of contract form part of the same case in controversy. Lastly, this Court has jurisdiction over the matter because the amount in controversy is more than $75,000.00 and the parties are domiciled in different states.

3. Venue is proper in the Southern District of California pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred here.

## PARTIES

4. Plaintiff Kevin John Phillips ("Phillips") (sometimes referred to as "Plaintiff") is an individual and a United States citizen residing at all relevant times in San Diego, California, within the Southern District of California.

5. Defendant Raymond Thomas Clark ("Clark") registered with FINRA as a general securities representative in September 1998 and registered as a general securities principal in February 2000, commonly known as a "broker."

6. From July 2010 to August 2014, Clark was registered with Dynasty Capital Partners, Inc. as a broker.

7. Prior to joining Dynasty, Clark was subject to at least eight customer disputes that stemmed from allegations of misrepresentation, "churning," unauthorized use of margins, negligence, failure to properly warn of inherent risks of highly speculative securities and trading on margin. Further, on November 15, 2011 FINRA had suspended Clark for two months and ordered $5,000 in penalties after finding Clark had used his personal email address to communicate with clients and for violating applicable record retention rules.

8. In October 2013 the Financial Industry Regulatory Authority ("FIRA") began investigating Clark for various security code violations including using his personal email to contact customers, making false statements to his firm, and failing to report customer complaints (the "First Investigation").

9. In April 2014, the FIRA began investigating Clark for additional security code violations including excessive trading, unauthorized trading, and accepting trading instructions from individuals who were not authorized to exercise trading authority (the "Second Investigation").

10. On August 5, 2014, the FIRA ordered Clark suspended from all trading activity for nine months and imposed $20,000.00 in monetary fines upon Clark following the FIRA's First Investigation into Clark's conduct.

11. On August 7, 2014, Dynasty terminated Clark. Based on information and belief, Dynasty terminated Clark due to Clark's FIRA violations.

12. On March 25, 2015, Clark was expelled as an FIRA member following the FIRA's Second Investigation into Clark Conduct. Clark failed to respond or provide any testimony for the FIRA's Second Investigation.

13. Currently, Clark is no longer licensed to act as a broker in the buying and selling of securities on behalf of customers or as an investment adviser because of his numerous FIRA violations. Based on information and belief, for all relevant times, Clark was domiciled in Buffalo, New York.

14. Defendant Dynasty Capital Partners, Inc. ("Dynasty") is a brokerage firm, also

called a broker-dealer, in the business of buying and selling securities – on behalf of its customers, for its own account, or both. The firm was formed as a corporation in Colorado on June 27, 2002 and maintains offices in both Colorado and New York. The firm is registered with the SEC and 31 U.S. states and territories, including California. Dynasty was a foreign corporation registered to transact business in California.

15. According to the California Secretary of State, Dynasty has been an FTB forfeited foreign corporation since April 2, 2013. As such, Dynasty's powers, rights and privileges have been forfeited since April 2, 2013 and remain forfeited as of the date of this Complaint.

16. Defendant RTC CAPITAL, LLC ("RTC") is allegedly a New York Limited Liability company that belongs to Clark. However, RTC is not a registered business entity in New York according to the Department of State, Division of Corporations, State Records and UCC. Despite transaction business in California, RTC is not a registered domestic or foreign business entity in California according to the California Secretary of State.

17. Defendant CLARK CAPITAL PARTNERS ("CCP") is an unknown business entity that belongs to Clark.

### GENERAL ALLEGATIONS

18. On or around October 2, 2013, Phillips opened a SEP IRA, a "simplified employee pension" retirement account with Dynasty. Dynasty opened the SEP IRA account for Phillips months after Dynasty had forfeited its corporate powers, rights, and privileges.

19. Phillips indicated "moderate risk tolerance" for the account investments. Defendant Raymond Clark was listed as the registered representative, or "broker," of this account.

20. Based on information and belief, on or around March 3, 2014, Clark filled out an application for a margin account at Dynasty on behalf of Phillips, without

Phillips's knowledge or consent. The application form was filled out by computerized information gathered from Phillips's previous application for the SEP IRA account. Based on information and belief, Clark forged Phillips's signature on the margin account application.

21. The SEC regulations require that a broker must obtain a client's signature to open a margin account due to the inherent risk in margin investing. The margin agreement, typically signed by the brokerage and the investor, outlines and defines the rules for margin accounts as set forth by the Federal Reserve Board, the New York Stock Exchange, the National Association of Securities Dealers, Inc. and the firm where he/she sets up the account. A typical margin agreement also explains the terms and conditions of the margin account – describing how the interest on the loan is calculated, how one is responsible for repaying the loan, and how the securities that one purchases serve as collateral for the loan. Such strict requirements are made to ensure complete disclosure of the benefits and risks of creating a margin account and purchasing stock on margin. Phillips never viewed these terms nor was he given an opportunity to do so prior to investing in margined investments.

22. From a margin account, the holder of the account can borrow money from the brokerage, typically fifty percent (50%) of the value of the purchase to buy securities. The holder of the account has twice as much buying power. However, the holder is also required to adhere to a maintenance margin by keeping twenty-five percent (25%), or higher depending on the brokerage, of the total value of the purchase in the account at all times. If the amount in the margin account falls below the maintenance margin, then the holder of the account is issued a margin call, which forces the holder to liquidate his stocks or add more cash to the account.

23. On or around March 17, 2014, Phillips received a letter from Dynasty stating that changes were made to his investment account. The current risk tolerance

had been changed from "moderate" to "high." Around the same time, Phillips also received confirmations for unauthorized transactions involving margined investments in a company called Ampio Pharmaceuticals, Inc. ("AMPE") for 207,500 shares. Based on information and belief, AMPE and Dynasty are located in the same building in Greenwood Village, Colorado at 5445 DTC Parkway.

24. On August 20, 2014, AMPE's stock dropped in price from $7.46 per share to $5.66 the following day and then to $4.84 on August 22, 2014. AMPE's share price further dropped to $3.25 in mid-November before eventually rallying to a near 365 day high of $8.61 in March 2015. As of May 28, 2015, AMPE's share price is $2.38.

25. Beginning August 21, 2014, Phillips received thirteen separate margin calls that required Phillips to deposit approximately $272,906.00 into the account, due the AMPE's decrease in the stock price.

26. Clark had promised Phillips that Dynasty would not charge any commissions for Phillips's trades in an effort to convince Phillips to invest his money with Clark and Dynasty. Relying on Clark's promise that Dynasty would not charge any commissions, Phillips opened a SEP IRA with Dynasty. Contrary to Clark's promise regarding commissions, Phillips paid approximately forty-two thousand eight hundred and sixty four dollars ($42,864.00) in commission fees to Clark and Dynasty for the unauthorized purchase of securities on margin from the margin account that Clark opened in Phillips's name without Phillips's consent.

27. In a separate transaction, Phillips loaned Clark and CCP $150,000.00 on or around February 6, 2014. Clark intended to use the loan to invest in Day Break Oil & Gas. Clark and CCP promised to repay Phillips for this loan. The entire balance of this loan was due on February 1, 2015. However, the entire balance of this loan remains unpaid.

28. In another transaction, Phillips loaned Clark and RTC $50,000. The written

D'EGIDIO LICARI &
TOWNSEND, APC
ATTORNEYS AT LAW
SAN DIEGO

PLAINTIFF KEVIN PHILLIPS'S COMPLAINT

promissory note was entered into between Phillips, Clark and RTC on August 17, 2014. Under the terms of this promissory note, Clark and RTC agreed to repay Phillips $50,000 together with interest at 15% per year. Although the entire balance of the loan was due on or around August 20, 2015, Clark and RTC have failed to make any payments under the terms of the promissory note.

## FIRST CAUSE OF ACTION

### (Cancellation of a Voidable Contract Under Rev. & Tax Code § 23304.1)
### Against Defendants Clark and Dynasty

29. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 28, as set forth above.

30. Section 23301 of the Revenue and Taxation Code authorizes the suspension or forfeiture of corporate powers of a corporation that has failed to pay its franchise taxes. Rev. & Tax. Code, § 23301.

31. Under Revenue & Tax Code Section 23304.1, every contract made in this state by a taxpayer during the time that the taxpayer's powers, rights, and privileges are suspended or forfeited pursuant to Section 23301 shall, subject to Section 23304.5, be voidable at the request of any party to the contract other than the taxpayer. Rev. & Tax. Code, §§ 23304.1(a),(d).

32. On or around October 2, 2013, Phillips entered into a contract with Clark and Dynasty to open a SEP IRA, a "simplified employee pension" retirement account with Dynasty.

33. Based on information and belief, on or around March 3, 2014, Clark filled out an application for a margin account at Dynasty on behalf of Phillips, without Phillips's knowledge or consent. The application form was filled out by computerized information gathered from Phillips's previous application for the SEP IRA account. Based on information and belief, Clark forged Phillips's signature on the margin account application, which created an unauthorized margin agreement between Dynasty and Phillips.

34. According to the California Secretary of State, the Franchise Tax Board ("FTB") had forfeited Dynasty's powers, rights, and privileges as of April 2, 2013 – approximately six months before Phillips entered into any contract with Dynasty. As of the date of this Complaint, Dynasty remains an FTB forfeited corporation.

35. Phillips wishes to declare all securities agreements, including but not limited to the SEP IRA account agreement and the margin account agreement entered between Phillips and Dynasty void and rescinded pursuant to Section 23304.5 of the Revenue and Tax Code because Dynasty was a FTB forfeited corporation at the time Dynasty and Phillips entered into the securities agreement(s).

## SECOND CAUSE OF ACTION

**(Violation of Section 10(b) and Rule 10(b)(5) of the Securities Exchange Act of 1934; Violation of California Corporations Code § 25401)**

**Against Defendants Clark and Dynasty**

36. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 35, as set forth above.

37. Federal law dictates that it shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b-5(c); 15 U.S.C.A. § 78j(b).

38. Rule 10(b)(5) prohibits any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, from making any untrue statements of material fact or from omitting any material fact in connection with purchase or sale of any security. 17 C.F.R. § 240.10b-5(b).

39. Federal law also imposes joint and several liability upon controlling persons to

D'EGIDIO LICARI &
TOWNSEND, APC
ATTORNEYS AT LAW
SAN DIEGO

PLAINTIFF KEVIN PHILLIPS'S COMPLAINT

the same extent as liability is imposed upon the person under their control. 15 U.S.C.A. § 78t(a).

40. Under California Corporation Code Section 25401, it is unlawful for any person, in connection with the offer, sale or purchase of a security, directly or indirectly to employ a device, scheme, or artifice to defraud; make an untrue statement or omission of material fact; or to engage in an act, practice, or course of business that would operate as a fraud or deceit upon another person. Corp. Code, § 25401.

41. Further, every person who directly or indirectly controls a person liable under California Corporations Code Section 25503, which remedies Section 25401 violations, may be held jointly and severally liable to the same extent as the person under their control. Corp. Code, § 25404.

42. Lastly, any person who materially assists in any violation of Section 25401, with intent to deceive or defraud is jointly and severally liable for such violation. Corp. Code, § 25404.1.

The Trade Commissions

43. From August 2010 to August 2014, Clark was registered with Dynasty Capital Partners, Inc. as a broker. Based on information and belief, Dynasty was acting as a controlling person during Clark's violation of federal securities regulations, and to Dynasty's knowledge, while employed with Dynasty.

44. Clark, on behalf of Dynasty, intentionally misrepresented that Phillips would not be charged any trade commissions in an effort to induce Phillips into opening an account with Dynasty. Despite Clark and Dynasty's representation, Dynasty charged Phillips at least $42,864.00 in commissions on trades that Phillips never authorized.

45. Clark and Dynasty's misrepresentation was a material fact; had it been known to Phillips that Dynasty would charge $42,864.00 in transaction costs, Phillips would not have opened the SEP IRA account with Clark and Dynasty. Further,

D'EGIDIO LICARI &
TOWNSEND, APC
ATTORNEYS AT LAW
SAN DIEGO

PLAINTIFF KEVIN PHILLIPS'S COMPLAINT

Clark and Dynasty procured Phillips's account through the use of interstate commerce, by telephone communications and email, for the purpose of purchasing securities.

46. Clark and Dynasty's misrepresentation was intentional because it was made in an effort to induce Phillips's investment with Clark and Dynasty. Based on information and belief, at the time Clark and Dynasty made the representation to Phillips, Clark and Dynasty knew the representation was false and intended to charge Phillips trade commissions upon securing Phillips's account.

47. Phillips reasonably relied on Clark and Dynasty's representation when Phillips agreed to open a SEP IRA account with Clark and Dynasty.

48. Dynasty failed to supervise Clark, who was under Dynasty's control and supervision. Dynasty knew or should have known about Clark's history of multiple violations of various securities laws and customer complaints to FINRA when Dynasty hired Clark.

49. As a direct and proximate result of Clark and Dynasty's misrepresentation and fraudulent conduct in relation to the purchase and sale of securities, and Dynasty's failure to supervise Clark, Phillips has been damaged in an amount to be determined at trial for commissions paid to Clark and Dynasty, interest on the margin loan amount, loss of revenue from the illegally purchased securities, foregoing legitimate investment opportunities, attorney's fees, and other costs incurred by Phillips as a result of Clark and Dynasty's conduct.

<u>The Margin Account</u>

50. On or around March 3, 2014 Clark, while employed with Dynasty, opened a margin account in Phillips's name without Phillips's knowledge or consent. The application form was filled out by computerized information gathered from Phillips's previous application for the SEP IRA account. Based on information and belief, Clark forged Phillips's signature on the margin account application.

51. Based on information and belief, Clark and Dynasty acted intentionally because

D'EGIDIO LICARI &
TOWNSEND, APC
ATTORNEYS AT LAW
SAN DIEGO

PLAINTIFF KEVIN PHILLIPS'S COMPLAINT

Phillips's signature was forged on the authorization forms and Phillips was unaware a margin account had been opened on his behalf.

52. Clark and Dynasty used the margin account to expose Phillips to a high degree of risk by leveraging the equity in Phillips's account and financing additional shares of stock, which Phillips did not authorize. As such, Clark and Dynasty engaged in conduct that amounted to fraud and deceit upon Phillips in violation of federal law and California law. 17 C.F.R. § 240.10b-5(c); 15 U.S.C.A. § 78j(b); Corp. Code, §§ 25401(a),(c).

53. Dynasty failed to supervise Clark, who was under Dynasty's control and supervision. Dynasty knew or should have known about Clark's history of multiple violations of various securities laws and customer complaints to FINRA when Dynasty hired Clark.

54. As a direct and proximate result of Clark and Dynasty's omissions and fraudulent conduct in relation to the purchase and sale of securities, and Dynasty's failure to supervise Clark, Phillips has been damaged in an amount to be determined at trial for commissions paid to Clark and Dynasty, interest on the margin loan amount, loss of revenue from the illegally purchased securities, foregoing legitimate investment opportunities, attorney's fees, and other costs incurred by Phillips as a result of Clark and Dynasty's conduct.

<u>Unauthorized Trading</u>

55. On or around March 17, 2014, Phillips received a letter from Dynasty stating the current risk tolerance on Phillips's account had been changed from "moderate" to "high." Based on information and belief, Clark had intentionally changed the risk tolerance on Phillips's account from "moderate" to "high" without Phillips's knowledge or authorization.

56. On or around March 17, 2014, Phillips received confirmations for unauthorized transactions involving margined investments in AMPE for 207,500 shares. Based on information and belief, Clark, through the use of interstate commerce,

D'EGIDIO LICARI &
TOWNSEND, APC
ATTORNEYS AT LAW
SAN DIEGO

1    intentionally engaged in the unauthorized purchase of high-risk securities by

2    placing an order through the New York Stock Exchange for 207,500 shares in

3    AMPE on behalf of Phillips without Phillips's knowledge or authorization.

4  57. Based on information and belief, AMPE and Dynasty are located in the same

5    building in Greenwood Village, Colorado at 5445 DTC Parkway.

6  58. Clark and Dynasty exposed Phillips to a high degree of risk through these

7    unauthorized trades in conjunction with the margin account Dynasty and Clark

8    created without Phillips's knowledge or consent. As such, Clark and Dynasty

9    engaged in conduct that amounted to fraud and deceit upon Phillips in violation

10   of federal law. 17 C.F.R. § 240.10b-5(c); 15 U.S.C.A. § 78j(b).

11  59. Dynasty failed to supervise Clark, who was under Dynasty's control and

12   supervision. Dynasty knew or should have known about Clark's history of

13   multiple violations of various securities laws and customer complaints to

14   FINRA when Dynasty hired Clark.

15  60. As a direct and proximate result of Clark and Dynasty's omissions and

16   fraudulent conduct in relation to the purchase and sale of securities, and

17   Dynasty's failure to supervise Clark, Phillips has been damaged in an amount to

18   be determined at trial for commissions paid to Clark and Dynasty, interest on the

19   margin loan amount, loss of revenue from the illegally purchased securities,

20   foregoing legitimate investment opportunities, attorney's fees, and other costs

21   incurred by Phillips as a result of Clark and Dynasty's conduct.

22                        **THIRD CAUSE OF ACTION**

23      **(Violation of Rule 10b-16 of the Securities Exchange Act of 1934)**

24                    **Against Defendants Clark and Dynasty**

25  61. Plaintiff realleges and incorporates herein by reference each and every allegation

26   contained in paragraphs 1 through 60, as set forth above.

27  62. Federal law prohibits a broker from extending credit, directly or indirectly, to

28   any client in connection with any securities transaction unless the broker has

D'EGIDIO LICARI &
TOWNSEND, APC
ATTORNEYS AT LAW
SAN DIEGO

12

established a procedure to assure the client received, at the time he opens his account, a written disclosure regarding interest and other charges. 17 C.F.R. § 240.10b-16.

63. On or around March 3, 2014 Clark, while employed with Dynasty, opened a margin account in Phillips's name, thereby extending credit to Phillips in relation to the purchase or sale of securities, without Phillips's knowledge or consent. The application form for the margin account was filled by computerized information gathered from Phillips's previous application for the SEP IRA account. Based on information and belief, Clark forged Phillips's signature on the margin account application.

64. Clark and Dynasty failed to disclose the margin account's creation on Phillips account to Phillips when the margin account was created. Thus, Clark and Dynasty violated Rule 10b-16 when Clark and Dynasty failed to provide necessary disclosures to Phillips in relation to the risks involved with the margin account, including but not limited to interest, charges and written statements in violation of 17 C.F.R. § 240.10b-16.

65. Dynasty failed to supervise Clark, who was under Dynasty's control and supervision. Dynasty knew or should have known about Clark's history of multiple violations of various securities laws and customer complaints to FINRA when Dynasty hired Clark.

66. As a direct and proximate result of Clark and Dynasty's omissions and fraudulent conduct in relation to the violation of Rule 10b-16, and Dynasty's failure to supervise Clark, Phillips has been damaged in an amount to be determined at trial for commissions paid to Clark and Dynasty, interest on the margin loan amount, loss of revenue from the illegally purchased securities, foregoing legitimate investment opportunities, attorney's fees, and other costs incurred by Phillips as a result of Clark and Dynasty's conduct.

///

## FOURTH CAUSE OF ACTION

### (Fraud - Intentional Misrepresentation)

### Against Defendants Clark and Dynasty

67. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 66, as set forth above.

68. Clark, while employed at Dynasty, intentionally misrepresented to Phillips that Dynasty would not charge Phillips any trade commissions in an effort to induce Phillips into opening an account with Dynasty. Despite Clark and Dynasty's representation, Dynasty charged Phillips at least $42,864.00 in commissions on trades that Phillips never authorized.

69. Clark and Dynasty's misrepresentation was intentional because it was made in an effort to induce Phillips's investment with Clark and Dynasty. Based on information and belief, at the time Clark and Dynasty made the representation to Phillips, Clark and Dynasty knew the representation was false and intended to charge Phillips trade commissions upon securing Phillips's account.

70. Clark and Dynasty's misrepresentation was a material fact; had it been known to Phillips that Dynasty would charge $42,864.00 in transaction costs, Phillips would not have opened the SEP IRA account with Clark and Dynasty.

71. Phillips reasonably relied on Clark and Dynasty's representation when Phillips agreed to open a SEP IRA account with Clark and Dynasty.

72. Dynasty knew or should have known about Clark's history of unscrupulous dealings with customers and failed to take proper precautions to protect customers like Clark, therefore Dynasty is vicariously liable for Clark's culpable actions.

73. As a direct and proximate result of Clark and Dynasty's intentional misrepresentation, and Dynasty's failure to supervise Clark, Phillips has been damaged in an amount to be determined at trial for commissions paid to Clark and Dynasty, interest on the margin loan amount, loss of revenue from the

illegally purchased securities, foregoing legitimate investment opportunities, attorney's fees, and other costs incurred by Phillips as a result of Clark and Dynasty's conduct.

## FIFTH CAUSE OF ACTION

### (Fraud - Concealment)

### Against Defendants Clark and Dynasty

74. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 73, as set forth above.

75. Clark intentionally concealed from Phillips that Clark opened a margin account for Phillips, forged Phillips's signature to open the account, purchased AMPE shares on margin without Phillips's consent, and charged Phillips commissions after promising that each trade would be free.

76. Phillips reasonably relied on Clark's representation that Dynasty would not charge Phillips commissions, as well as Clark's trust and expertise and Dynasty's reputation when entering into a broker-client relationship.

77. Phillips was harmed because he was in fact charged commissions despite Clark's promises to the contrary. Phillips was further harmed in that AMPE's shares tumbled, thus devaluing Phillips portfolio value and subsequently requiring Phillips to make at least $200,000.00 in margin calls. Phillips is also paying interest on the margined portion of his AMPE investment and Dynasty, despite being made aware of the facts in this matter, has continued charging Phillips interest.

78. Dynasty knew or should have known about Clark's history of unscrupulous dealings with customers and failed to take proper precautions to protect customers like Phillips, therefore Dynasty is vicariously liable for Clark's culpable actions.

79. As a direct and proximate result of Clark and Dynasty's foregoing conduct, and Dynasty's failure to supervise Clark, Phillips has been damaged in an amount to

D'EGIDIO LICARI &
TOWNSEND, APC
ATTORNEYS AT LAW
SAN DIEGO

PLAINTIFF KEVIN PHILLIPS'S COMPLAINT

1   be determined at trial for fees paid to Clark and Dynasty, interest on the margin

2   loan amount, foregoing legitimate investment opportunities, the attorney's fees

3   and other costs incurred by Phillips as a result of Clark's conduct.

### SIXTH CAUSE OF ACTION

#### (Breach of Fiduciary Duty)

#### Against Defendants Clark and Dynasty

80. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 79, as set forth above.

81. As investment brokers, Clark and Dynasty owed a fiduciary duty to their clients. *Duffy v. Cavalier*, 215 Cal. App. 3d 1517, 1533, (1989).

82. Clark was the designated broker for Phillips's SEP IRA account. Phillips trusted Clark and Dynasty to protect his assets, including his money and all personal information.

83. Clark and Dynasty violated their fiduciary duty when Clark and Dynasty opened a margin account for Phillips without Phillips's consent, forged Phillips's signature to open the margin account, purchased AMPE shares on margin without Phillips's consent, and charged Phillips commissions after promising that each trade would be free.

84. Dynasty further breached its fiduciary duty to Clark when Dynasty negligently hired and failed to supervise Clark. Further, Dynasty knew or should have known about Clark's history of unscrupulous dealings with customers and failed to take proper precautions to protect customers like Clark, therefore Dynasty is vicariously liable for Clark's culpable actions.

85. As a direct and proximate result of Clark and Dynasty's foregoing conduct, Phillips has been damaged in an amount to be determined at trial for fees paid to Clark and Dynasty, interest on the margin loan amount, foregoing legitimate investment opportunities, the attorney's fees and other costs incurred by Phillips as a result of Clark's conduct.

## SEVENTH CAUSE OF ACTION

### (Negligence)

### Against Defendants Clark and Dynasty

86. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 85, as set forth above.

87. Clark and Dynasty, as investment brokers and Phillips's fiduciaries, owed Phillips a duty of care to provide advice and full disclosure of information to Phillips.

88. Clark and Dynasty breached their duty of care when they forged Phillips's signature to open an unauthorized margin account and subsequently traded AMPE shares on margin without Phillips's consent. Clark and Dynasty's acts were willful, volitional, and was a substantial factor in causing harm Phillips's harm.

89. Dynasty knew or should have known about Clark's history of unscrupulous dealings with customers and failed to take proper precautions to protect customers like Clark, therefore Dynasty is vicariously liable for Clark's culpable actions.

90. As a direct and proximate result of Clark and Dynasty's foregoing conduct, Phillips has been damaged in an amount to be determined at trial for fees paid to Clark and Dynasty, interest on the margin loan amount, foregoing legitimate investment opportunities, the attorney's fees and other costs incurred by Phillips as a result of Clark's conduct.

## EIGHTH CAUSE OF ACTION

### (Negligent Misrepresentation)

### Against Defendants Clark and Dynasty

91. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 90, as set forth above.

92. Clark, on behalf of Dynasty, represented to Phillips that Phillips would not be

17

charged any trade commissions.

93. Despite Clark's representation, Dynasty charged Phillips at least $42,864.00 in commissions on trades that Phillips never authorized.

94. When Clark represented to Phillips that Phillips would not be charged any trade commissions, Clark had no reasonable grounds for believing his representation was true.

95. Clark intended Phillips to rely on Clark's representation in an effort to induce Phillips into opening an account with Clark and Dynasty.

96. Phillips reasonably relied on Clark's representation when Phillips opened an account with Clark and Dynasty, believing he would save money on trade commissions.

97. Clark's misrepresentation caused Phillips damages totaling $42,864.00 in trade commissions. Phillips's reliance on Clark's representation was a substantial factor in causing Phillips's harm as Phillips reasonably believed he would not incur any trade commission charges based on Clark's representation.

98. Dynasty knew or should have known about Clark's history of unscrupulous dealings with customers and failed to take proper precautions to protect customers like Clark, therefore Dynasty is vicariously liable for Clark's culpable actions.

99. As a direct and proximate result of Clark's foregoing conduct, and Dynasty's failure to supervise Clark, Phillips has been damaged in an amount to be determined at trial for commissions paid to Clark and Dynasty, interest on the margin loan amount, loss of revenue from the illegally purchased securities, foregoing legitimate investment opportunities, attorney's fees, and other costs incurred by Phillips as a result of Clark and Dynasty's conduct.

///

///

///

### NINTH CAUSE OF ACTION

### (Negligent Hiring, Supervision, and Retention)

### Against Defendant Dynasty

100.   Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 99, as set forth above.

101.   Prior to joining Dynasty, Clark was subject to at least eight customer disputes that stemmed from allegations of misrepresentation, "churning," unauthorized use of margins, negligence, failure to properly warn of inherent risks of highly speculative securities and trading on margin. Further, on November 15, 2011 the FINRA had suspended Clark for two months and ordered $5,000 in penalties after finding Clark had used his personal email address to communicate with clients and for violating applicable record retention rules. Clark's customer disputes and complaints are public and easily accessible via the FIRA website.

102.   Dynasty, as a brokerage firm, owes a duty of care in the hiring of brokers as to ensure honest dealings with clients of the brokerage firm. Dynasty knew or should have known that Clark had numerous FINRA complaints and fines when Dynasty hired, retained, and supervised Clark.

103.   Clark's FINRA violations created a risk to Dynasty's clients by subjecting future clients to the possibility of further FINRA violations, fraud, breaches of fiduciary duties, and negligence.

104.   While employed with Dynasty, Clark continued his unlawful, fraudulent, and negligent conduct when Clark opened a margin account for Phillips without Phillips's consent, forged Phillips's signature to open the margin account, purchased AMPE shares on margin without Phillips's consent, and charged Phillips commissions after promising that each trade would be free.

105.   Dynasty's decision to hire Clark, retain Clark through August 2014, and its failure to monitor Clark's efforts at Dynasty were a substantial factor in causing Phillips's harm.

D'EGIDIO LICARI &
TOWNSEND, APC
ATTORNEYS AT LAW
SAN DIEGO

PLAINTIFF KEVIN PHILLIPS'S COMPLAINT

106.   As a direct and proximate result of Dynasty's negligent hiring and failure to supervise Clark, Phillips has been damaged in an amount to be determined at trial for fees paid to Clark and Dynasty, interest on the margin loan amount, foregoing legitimate investment opportunities, the attorney's fees and other costs incurred by Phillips as a result of Clark's conduct.

## TENTH CAUSE OF ACTION

**(Violation of California Business and Professions Code Sections 17200 ET SEQ.)**

**Against Defendants Clark and Dynasty**

107.   Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 106, as set forth above.

108.   California Business & Professions Code Section 17200, et seq., prohibits acts of unfair competition, which means and includes any "fraudulent business act or practice" and conduct which is "likely to deceive" and is "fraudulent" within the meaning of Business and Professions Code § 17200.

109.   As more fully described above, the Clark and Dynasty's acts and practices were deceptive, and constitute fraudulent business acts or practices. Specifically, Clark opened a margin account for Phillips without Phillips's consent, forged Phillips's signature to open the margin account, purchased AMPE shares on margin without Phillips's consent, and charged Phillips commissions after promising that each trade would be free.

110.   As a direct and proximate result of Clark and Dynasty's fraudulent business practices, Phillips has been damaged in an amount to be determined at trial for fees paid to Clark and Dynasty, interest on the margin loan amount, foregoing legitimate investment opportunities, the attorney's fees and other costs incurred by Phillips as a result of Clark's conduct.

///

///

D'EGIDIO LICARI &
TOWNSEND, APC
ATTORNEYS AT LAW
SAN DIEGO

PLAINTIFF KEVIN PHILLIPS'S COMPLAINT

## ELEVENTH CAUSE OF ACTION

### (Breach of Contract)

### Against Defendants Clark, RTC and CCP

<u>Clark and RTC</u>

111.   Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 110, as set forth above.

112.   On or around February 6, 2014 Phillips, Clark and CCP entered into a contract. Under the terms of the contract, Phillips promised to loan Clark and CCP $150,000.00 and Clark and CCP promised to repay Phillips $150,000.00 with interest by February 6, 2015.

113.   Phillips substantially performed all his obligations under the contract and loaned Clark and CCP $150,000.00 on or around February 6, 2014. All conditions required by the contract for Clark and CCP's performance had occurred.

114.   Clark and CCP failed to repay Phillips under the terms of the contract.

115.   As a direct and proximate result of Clark and RTC's breach of contract, Phillips has been damaged in an amount to be determined at trial.

<u>Clark and CCP</u>

116.   In another transaction, Phillips, Clark and RTC entered into a written promissory note on August 17, 2014. Under the terms of the promissory note, Phillips promised to loan Clark and RTC $50,000.00 and Clark and RTC promised to repay the $50,000.00 loan with 15% interest per year by August 20, 2015. The terms of the promissory note required Clark and RTC to make payments every six months. Although the promissory note matures on August 20, 2015, Clark and RTC have failed to submit any payments under the terms of the promissory note.

117.   Phillips substantially performed all his obligations under the promissory note and loaned Clark and RTC $50,000.00. All conditions required by the contract

21

D'EGIDIO LICARI &
TOWNSEND, APC
ATTORNEYS AT LAW
SAN DIEGO

1    for Clark and RTC's performance had occurred.

2    118.   Clark and RTC have failed to make any payments to Clark as agreed in the

3    promissory note.

4    119.   As a direct and proximate result of Clark and CCP's breach of the written

5    promissory note, Phillips has been damaged in an amount to be determined at

6    trial.

7

8                              **PRAYER FOR RELIEF**

9    WHEREFORE, Plaintiff prays for relief and judgment against defendants as

10   follows:

11   **As to the First Cause of Action Against Defendants Clark and Dynasty:**

12       1.   For rescission of all contracts between Phillips, Clark, and Dynasty,

13            including but not limited to the SEP IRA agreement and margin account

14            agreement and for restitution of all monies paid therein as authorized by Rev.

15            & Tax. Code, § 23304.5;

16       2.   For pre-judgment interest;

17       3.   For attorney's fees and costs.

18   **As to the Second, Third, and Fourth Causes of Action against defendants**

19   **Clark and Dynasty:**

20       1.   A declaration that Defendants are jointly and severally liable to Phillips as

21            authorized by 15 U.S.C.A. § 78t(a); Corp. Code, § 25404; and Corp. Code, §

22            25404.1

23       2.   For rescission of the margin account agreement between Phillips, Clark, and

24            Dynasty and for restitution of all monies paid therein as authorized by 15

25            U.S.C.A. § 78cc and Corp. Code, § 25503. If restitution cannot be made, then

26            for compensatory damages in an amount to be determined at trail;

27       3.   For consequential damages in an amount to be determined at trial, including

28            but not limited to interest on the margin loan amount and foregoing

D'EGIDIO LICARI &
TOWNSEND, APC
ATTORNEYS AT LAW
SAN DIEGO

legitimate investment opportunities;

4. For punitive damages;

5. For pre-judgment interest;

6. For attorney's fees and costs.

**As to the Fifth and Sixth Causes of Action against Clark and Dynasty:**

1. For rescission of all contracts between Phillips, Clark, and Dynasty, including but not limited to the SEP IRA agreement and margin account agreement;

2. For restitution of all monies paid therein, or in the alternative, for compensatory damages in an amount to be determined at trail;

3. For consequential damages in an amount to be determined at trial, including but not limited to interest on the margin loan amount and foregoing legitimate investment opportunities;

4. For punitive damages;

5. For pre-judgment interest;

6. For attorney's fees and costs.

**As to the Seventh, Eighth, Ninth, and Eleventh Causes of Action against Clark and Dynasty:**

1. For compensatory damages in an amount to be determined at trail;

2. For pre-judgment interest;

3. For attorney's fees and costs.

**As to the Ninth Cause of Action Against Defendant Dynasty:**

1. A declaration that Defendants are jointly and severally liable to Phillips;

2. For compensatory damages in an amount to be determined at trail;

3. For consequential damages in an amount to be determined at trial, including but not limited to interest on the margin loan amount and foregoing legitimate investment opportunities;

4. For pre-judgment interest;

5. For attorney's fees and costs.

**As to the Tenth Cause of Action Against Defendants Clark and Dynasty:**

1. For restitution of monies wrongfully received in an amount to be determined at trial;

2. For consequential damages in an amount to be determined at trial, including but not limited to interest on the margin loan amount and foregoing legitimate investment opportunities;

3. For pre-judgment interest;

4. For attorney's fees and costs.

**As to the Eleventh Cause of Action Against Defendants Clark and Dynasty:**

1. For compensatory damages in an amount to be determined at trial;

2. For consequential damages in an amount to be determined at trial;

3. For pre-judgment interest;

4. For attorney's fees and costs.

Dated:  June 23, 2015

By:_____s/Michael Licari_____

Michael A. Licari and Daniel Halimi
Attorneys for Plaintiff Kevin Phillips

D'EGIDIO LICARI &
TOWNSEND, APC
ATTORNEYS AT LAW
SAN DIEGO

PLAINTIFF KEVIN PHILLIPS'S COMPLAINT